<u>**NOT RECOMMENDED FOR PUBLICATION**</u>
File Name: 20a0103n.06

Case No. 19-5454

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

```
FILED
Feb 13, 2020
DEBORAH S. HUNT, Clerk
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>ANDREW PAUL SCHMIDT,<br><br>    Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>**OPINION** |

BEFORE: STRANCH, SUHRHEINRICH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. A grand jury returned a superseding indictment charging Andrew Paul Schmidt with production of child pornography by a parent, transportation of child pornography, and possession of child pornography. Schmidt pleaded guilty to all charges without a plea agreement. Schmidt's Guidelines offense level was the highest possible, corresponding to a recommendation of life in prison. The government argued for 80 years. The district court sentenced Schmidt to 360 months' imprisonment followed by a lifetime of supervised release. Schmidt now asks this court to find his 360-month sentence substantively unreasonable. But we find that the district court did not err. So we AFFIRM.

**I.**

By all measures, Andrew Paul Schmidt seemed to lead a pleasant—even admirable— American life. He was born and raised in Fon du Lac, Wisconsin. He had a "fine" childhood,

surrounded by his three siblings and his parents. (R. 42, Presentence Report, PageID 132.) His father worked at an electric company while, for the most part, his mother stayed at home. After graduating high school, he joined the United States Army where he served in five deployments over 19 years—two combat and three non-combat—and the Army honorably discharged him. He had one child with his wife, Natalie. He also made friends like Jennifer Avalos who "trusted . . . [him] with her life." (Appellant's Br. at 5.) And he even had hobbies such as photography.

But behind Schmidt's American-dream life was something else: Schmidt produced, transported, and possessed child pornography. To pursue those interests, Schmidt used Kik.[1] Kik messenger is a free mobile application that allows users to send messages, videos, and images to chat with other users. Law enforcement know or suspect that individuals with sexual interests in children frequent forums like Kik. So an FBI Special Agent went undercover on the app and "put out [] ticklers"—posts to draw out criminals on the app. (R. 62, Tr. Sent. Vol. 1, PageID 370.)

Using the username "bwphotoguy," Schmidt initiated conversation with the agent on Kik.[2] (R. 42, Presentence Report, PageID 124.) Not long after, Schmidt began sending the agent naked pictures of his daughter. Schmidt let the agent know that he had taken explicit pictures of his daughter "[s]ince she was born." (R. 62, Tr. Sent. Vol. 1, PageID 377 (quoting the Kik conversation).) He also described to the undercover agent different ways—"oral[ly]" and

---

[1] Schmidt also used other messaging apps "that are harder for law enforcement to decode[.]" (R. 62, Tr. Sent. Vol. 1, PageID 372.) One of those apps that Schmidt used was "Fet Life[.]" (*Id.*) Fet Life "[i]s like a fetish messaging app where folks can get in contact with each other that [have] similar interests." (*Id.*) He also used the Whisper app, "an app where individuals can put out a message and -- kind of like fishing for other individuals that are interested in whatever they're talking about." (*Id.* at 372–73.) During the sentencing hearing, FBI Special Agent Steve Keary explained that "[l]ots of child predators use those [apps] to get in contact with other individuals that are interested in trading or getting information as well." (*Id.* at 373.)

[2] The government has kept the undercover agent's name and his Kik username confidential because he remains undercover and still uses the same username for his work.

"digital[ly]"—that he had assaulted his daughter. (*Id.* at 376.) He even let the agent know "that he digitally penetrated his daughter's vagina" as recently as "the previous week." (R. 42, Presentence Report, PageID 124.) And he graphically described his desire to assault "seven to ten-year-old[s.]" (R. 63, Tr. Sent. Vol. 2, PageID 412.)

Schmidt took explicit pictures of kids at his daughter's soccer games as well. (R. 62, Tr. Sent. Vol. 1, PageID 375–76 (explaining that Schmidt would "zoom[] in" on "multiple children['s]" "crotches" and "genital area[s]" so that he could snap pictures of the children's "panties").) He also sent those photos to the agent "as some form of erotica." (*Id.* at 375.) And he described and shared at least one of the photos he took of his friend Avalos's 11-month-old daughter "naked in the water at [his] request."[3] (R. 63, Tr. Sent. Vol. 2, PageID 412.) He expressed disappointment over never having a chance to babysit the infant and over never having a chance to "spen[d] a little [time] naked with her." (*Id.*)

The undercover agent sent an emergency disclosure request to Kik and ultimately tracked down Schmidt's name and home address. When the FBI agents went to Schmidt's house, Schmidt denied touching his daughter. But he confessed to creating and transmitting images of his daughter with his cell phone. So the agents arrested Schmidt.

---

[3] Schmidt took photos of his friend Avalos's 11-month-old child during a photo shoot at Saunders Springs. "[W]hile the child was getting photographed and playing in the creek, [] Schmidt suggested that [Avalos] take [the girl's] clothes off and the mother did." (R. 62, Tr. Sent. Vol. 1, PageID 392.) After that, "Schmidt took some close-up photographs of the child's genitalia during th[e] photo shoot[.]" (*Id.*)

When Avalos found out about Schmidt's betrayal, she felt "[r]age[.]" (*Id.* at 397.) She testified that she now "wake[s] up screaming from the nightmares[,] . . . [and] require[s] therapy service at least once a week, sometimes multiple times just to deal with the overwhelming effects of the pain of what he has done to my daughter[.]" (*Id.* at 399.) And Schmidt's actions "ha[ve] affected the relationship [Avalos has] with [her] husband and children" because she "ha[s] to know where everyone is at all times." (*Id.*) She no longer trusts anyone.

Agents then seized Schmidt's cell phone and other electronic media. In the process, they found a photograph that depicted "Schmidt touching his daughter"; in the photo Schmidt "us[es] his hand to spread open the child's genitals." (R. 62, Tr. Sent. Vol. 1, PageID 382, 392–93.) And they found other child pornography—including "an up-close picture" of a "toddler-aged boy's" genitalia and an explicit picture of someone inappropriately touching a young boy's genitalia—produced by third parties and possessed and transported by Schmidt. (R. 42, Presentence Report, PageID 124.)

Other evidence of child pornography in Schmidt's possession later surfaced. His ex-wife found a thumb drive in their garage (Schmidt's photography workspace) and handed it over to the agents. On the drive, agents found "over a thousand images" of different children. (R. 62, Tr. Sent. Vol. 1, PageID 387.) The drive also contained HTML links likely containing child pornography. (*Id.* at 386–87 (explaining, for example, one link labeled "Eight-Year-Old Cambodian girl raped by sex tourists").) But the agents viewed the thumb drive's contents on "a standalone computer[.]" (*Id.* at 386.) So they "couldn't see where those links went." (*Id.*)

They found "four different . . . grooming guides" on that thumb drive as well.[4] (*Id.* at 387.) One of the guides, for example, provided information on "How to Have Sex With Very Young Girls Safely[.]" (*Id.*) In other words, it instructed the reader how to "gratify [themselves] with a child victim" at different stages of the child's life. (*Id.* at 388.) It also described "various sexual acts that [the reader] could do with children without causing permanent damage." (*Id.*) Another guide gave readers "an explicit line by line way to groom a child" including "different games that [a stepfather] can do with [] children to slowly break down those barriers of trust to get the child

---

[4] "Grooming" is a process intended to convince another that sexual activity with children is "normal." (R. 62, Tr. Sent. Vol. 1, PageID 378–79.)

to engage in sexual acts and . . . to get [the children] to enjoy it." (*Id.* at 388–89.) And another discussed "Child Sex Positions." (*Id.* at 387.)

Agents also found three more chatroom conversations involving Schmidt. First, they found explicit messages on Whisper between Schmidt and a thirteen-year-old girl.[5] Schmidt and the girl discussed her age, and the girl let Schmidt know that she was "13 and a half at that time." (*Id.* at 383.) Schmidt let her know that "[a]ge d[idn't] really mean much to [him]"—a statement FBI Agent Steve Keary characterized as grooming. (*Id.* at 384.) Schmidt also sent the girl pictures of himself in his Army uniform and pictures of his military medals. And he expressed his desire to meet the girl for sex.

Second, agents discovered that Schmidt transported child pornography—including images depicting his daughter—to another Kik user, "Rainbow Love[.]" (R. 42, Presentence Report, PageID 125.) In the chat with "Rainbow Love[,]" Schmidt graphically described physically assaulting his daughter more than once. (R. 62, Tr. Sent. Vol. 1, PageID 381.) Agents "attempted to serve multiple subpoenas" and discover Rainbow Love's identity. (*Id.* at 374.) But "that [] individual was in Costa Rica[.]" (*Id.*) So they ultimately never found that information.

Third, Schmidt also spoke to "Scamper" on Fet Life. (*Id.* at 391.) Schmidt shared with Scamper that Schmidt "had a sexual experience with [his daughter] when she was very young at Disney World and finished on her while she was on the changing table because he couldn't control himself[.]" (*Id.*)

The grand jury charged Schmidt with sixteen counts: (1) five counts of production of child pornography in violation of 18 U.S.C. § 2251(a), (e); (2) ten counts of transportation of child

---

[5] On cross-examination at Schmidt's sentencing hearing, FBI Agent Steve Keary testified that the FBI "chose not to interview the [thirteen-year-old] child because [the agents] d[id]n't actually believe that [Schmidt and the girl] met up and she was actually a physical victim in this." (R. 62, Tr. Sent. Vol. 1, PageID 395.)

pornography in violation of 18 U.S.C. § 2252A(a)(1), (b); and (3) one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). Schmidt pleaded guilty without a plea agreement to all charges.

At sentencing, the government sought an 80-year sentence. First, it argued against the court using Schmidt's military experience and his lack of criminal history as factors to lower his sentence.[6] "[A] lot of soldiers [] don't do this type of behavior" even after "serv[ing] in combat zones." (R. 63, Tr. Sent. Vol. 2, PageID 410.) So the government urged the court: "Don't believe there's any correlation between PTSD and attraction to children." (*Id.*) In fact, Schmidt "used [] his military career as a way to groom [a] 13 year old" when he sent her pictures of himself in his uniform and pictures of his medals. (*Id.*) And the government hypothesized that Schmidt's lack of criminal history did not stem from his inactivity; instead, "it's an issue of him not being caught[.]" (*Id.* at 409.) Schmidt used messaging apps "designed to provide a user anonymity" and that made it "difficult for law enforcement to get evidence from the outside world[.]" (*Id.* at 409–10.) It made sense that law enforcement never caught him trafficking in child porn until that point.

Second, the government pointed out the multiple parties involved in Schmidt's transgressions. Schmidt's abuse involved three minors: his five-year-old daughter, Avalos's 11-month-old infant, and the 13-year-old girl online. Schmidt also sent the child porn he produced to more than one person—the undercover agent and Rainbow Love. But Agents never located Rainbow Love. So they could not determine with certainty who had access to those images and where they would end up. And each time someone viewed those images would "revictimiz[e] [Schmidt's] five-year-old daughter." (*Id.* at 415.)

---

[6] A judge advocate, Ms. Ellis, spoke on this point as well and supported the government's position. She conceded that Schmidt served the military "excellently[.]" (R. 63, Tr. Sent. Vol. 2, PageID 437.) But that "d[id]n't matter when" he conducted the illicit conduct "in the shadows." (*Id.* (explaining that "he didn't go to work and molest children at work").)

No. 19-5454, *United States v. Schmidt*

Third, the government emphasized the speed and comfort with which Schmidt shared explicit pictures of his daughter with strangers online—the undercover agent and Rainbow Love. (*Id.* at 406–07 (explaining that Schmidt "went from zero to 60 in . . . one second").) "[T]hat support[ed] [the government's position that it] didn't find all the chats that exist." (*Id.* at 407.)

Fourth, the government argued that Schmidt's actions demonstrated a "dedicated interest to educat[e] himself on how to be the best at engaging in sexual activity with children." (*Id.* at 412.) And it argued his online chats showed his "true intention" to act on that knowledge. (*Id.*) To support its position, the government pointed to the grooming guides and how-to manuals Schmidt saved on his thumb drive. It also raised Schmidt's expressions of regret over never babysitting—and thus spending alone time with—his friend's 11-month-old infant.

And last, it argued that the evidence showed Schmidt did act on that knowledge. He went "beyond fantasy" and "molested his own daughter." (*Id.* at 408, 411.) But "proof of crossing the line of touching is often difficult for us to obtain" given the victims' ages. (*Id.* at 411.) To support its position, the government reminded the court of the grooming documents in Schmidt's possession and the "grooming behavior" that Schmidt "engag[ed] in" with the 13-year-old girl online. (*Id.* at 407–08.) "There's [also] no innocent explanation for th[e] [] photograph" depicting Schmidt touching his daughter's genitalia to take an explicit picture of her. (*Id.* at 408.) And it reminded the court that Schmidt described assaulting his daughter with graphic details.

Schmidt's attorney recommended fifteen years. He stressed Schmidt's military service and lack of criminal history to support the much shorter sentence. He also argued that Schmidt's transgressions only occurred "in a relatively short period of time and fairly quickly." (*Id.* at 431.) He deduced this point because all conduct discovered by the agents occurred between June 2017— the date Schmidt last modified the thumb drive—and November or December 2017. And he

argued that the "proof shows that" Schmidt's "locker room talk" of molesting, assaulting, and grooming his daughter went no further than talk. (*Id.* at 432.) He characterized that talk as "fantasy" and not "reality." (*Id.*) But he "concede[d]" that agents found "one photograph" where Schmidt "touche[d] . . . his daughter's pubic area externally." (*Id.* at 431–32.)

Schmidt's attorney explained that the government essentially requested life without parole, something the court should only give to a defendant it finds "beyond redemption[.]" (*Id.* at 422.) But Schmidt's attorney explained: As "Mick Jagger said . . . 'Lose your dreams and you'll lose your mind.'" (*Id.* at 436 (quoting Ruby Tuesday).) In other words, Schmidt's attorney believed Schmidt deserved better. He pleaded with the court to not impose a life sentence because doing so would signal that the court "[is] giving up on" Schmidt. (*Id.*) Schmidt's attorney did not want the court to "take away all [of Schmidt's] hope[.]" (*Id.*) And he believed Schmidt could learn the lesson after fifteen years' imprisonment and "would still have some productive years left" after that.[7] (*Id.* at 437.)

The court considered the parties' arguments. It also considered the presentence report and Schmidt's objection to the report.[8] It agreed with the presentence report that Schmidt's "total offense level here is 43." (R. 62, Tr. Sent. Vol. 1, PageID 331.) And it heard testimony from the government's witnesses and the victims. (*E.g.*, *id.* at 343 (hearing testimony from Schmidt's ex-

---

[7] In Ms. Ellis's perspective, the fact the defense raised—that fifteen years left Schmidt with "some productive years"—supported *the government's* requested sentence. Ellis explained that "the evidence has demonstrated" that Schmidt would "do[] this to another child again . . . if he got out." (R. 63, Tr. Sent. Vol. 2, PageID 437–38.)

[8] Schmidt's attorney made one objection during sentencing. He argued that the defendant improperly received a five-level increase for a pattern of activity under United States Sentencing Guidelines Section 4B1.5(b)(1). He believed that the five-level increase "[wa]s essentially multiple counting -- double counting[.]" (R. 62, Tr. Sent. Vol. 1, PageID 326.) The government explained to the court that we do not "consider it [] double counting." (*Id.* at 327 (citing *United States v. Calmes*, 728 F. App'x 539 (6th Cir. 2018)).) But Schmidt does not raise that argument on appeal. So that argument is abandoned.

wife on the impact on their daughter).) It then balanced the 18 U.S.C. § 3553(a) factors. It found that Schmidt's "history and characteristics" supported a lighter sentence. (R. 63, Tr. Sent. Vol. 2, PageID 440.) His "established [military] record" and lack of criminal history "obviously weigh in [Schmidt's] favor." (*Id.*)

But all other favors weighed against Schmidt. The court "consider[ed] as relevant conduct that there were over a thousand images[.]" (*Id.* at 441.) And it believed, "as [Schmidt] has admitted," that his conduct "would have gone on had he not been caught[.]" (*Id.*) So it found the "nature and circumstances of the offense . . . obviously very serious" and "very disturbing." (*Id.* at 440–41.) The "seriousness of the offense[,]" the court's need to "promot[e] respect for the law," and the need to "afford[] [others] protection from further crimes" also weighed in favor of a longer sentence. (*Id.* at 441.) The court "believe[d] what [] Schmidt said in those chats." (*Id.* at 442.) His statements "certainly le[d] [the court] to believe that there was . . . grooming going on in this case" and that his statements were "not fantasy" but were "certainly rooted in reality[.]" (*Id.*) The court also found "rehabilitation and treatment . . . will be necessary in this case and necessary for [] Schmidt and that's something the Bureau of Prisons can certainly provide under the circumstances." (*Id.*) And it took into account "several other cases of production to determine what might be an appropriate sentence here" to "prevent[] [sentencing] disparity in this case." (*Id.* at 442–43.)

So the district court sentenced Schmidt to concurrent sentences of 240 months' imprisonment for each of the production counts, concurrent sentences of 60 months' imprisonment for the transportation counts to run consecutively with the first five counts, and 60 months' imprisonment for the possession count to "run consecutive to all the other counts[.]" (*Id.* at 443.) In total, the court sentenced Schmidt to 360 months' imprisonment and a life term of supervised

No. 19-5454, *United States v. Schmidt*

release. It concluded that it found the 360-month sentence "sufficient but not greater than necessary to comply with the purposes set forth in 3553(a)(2)." (*Id.* at 445.) Schmidt appealed.

## II.

Schmidt alleges two errors below. First, he asks this court to find his sentence substantively unreasonable. He argues that his sentence is greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a). Second, he argues that the sentencing enhancements in Sentencing Guidelines Sections 2G2.1 and 2G2.2 "are so broadly applicable in child pornography cases that they do not sufficiently distinguish between levels of culpability and severity." (Appellant's Br. at 22.)

### A.

Criminal sentences must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). "Sentences within a defendant's Guidelines range are presumptively substantively reasonable, a presumption that naturally extends to sentences below the Guidelines range." *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015); *see also United States v. Massey*, 663 F.3d 852, 857 (6th Cir. 2011) (explaining that this presumption of reasonableness is afforded for sentences "within a correctly calculated Guidelines range").

A sentence is substantively unreasonable "if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)); *see United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A substantively reasonable sentence, on the other hand, "'must be proportionate to the seriousness of the circumstances of the offense and offender, and "sufficient but not greater than necessary, to comply

No. 19-5454, *United States v. Schmidt*

with the purposes'" of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Ronald Smith*, 505 F.3d 463, 470 (6th Cir. 2007)).

The § 3553(a) factors require a court to consider "the nature and circumstances of [the defendant's] conduct, [the defendant's] history and characteristics, the need for the sentence, sentencing disparities, and the need for restitution." *Pirosko*, 787 F.3d at 375; *see also* § 3553(a)(1), (a)(2). If a defendant raises a specific argument to support a lower sentence, the district court must show that it considered the argument. *See United States v. Parrish*, 915 F.3d 1043, 1049 (6th Cir. 2019). But "a district court need not provide an explanation for rejecting a mitigating argument if 'the matter is conceptually simple' and 'the record makes clear that the sentencing judge considered the evidence and arguments.'" *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356–59 (2007)).

We review a district court's legal determination about the Guidelines de novo, its factual findings for clear error, and the substantive reasonableness of a sentence for abuse of discretion. *Pirosko*, 787 F.3d at 372. And "[r]egardless of whether we would have imposed the same sentence, we must afford due deference to the district court's decision to determine the appropriate length of the defendant's sentence, so long as it is justified in light of the relevant § 3553(a) factors." *United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 2009); *see United States v. Faulkner*, 926 F.3d 266, 273 (6th Cir. 2019) (explaining that a substantive-unreasonableness challenge to a sentence is "an uphill climb" because we "grant considerable deference to the sentence imposed by the district court").

Upon review, we find no reason to question the district court's judgment. This court cannot find the sentence imposed by the district court substantively unreasonable. Schmidt's conviction carried with it a maximum sentence of life imprisonment: his actions "br[ought] the total offense

level to 43" and "produce[d] a guidelines range of 4,440 months[.]" (R. 62, Tr. Sent. Vol. 1, PageID 331.) For good reason. Schmidt acted reprehensibly. His actions irreparably harmed his own daughter, a friend's infant daughter, and a 13-year-old girl. And his actions will continue to "revictimiz[e]" at least his daughter given Schmidt's unabashed sharing online of the explicit pictures he took of her. But the court sentenced Schmidt to 30 years, *less than ten percent* of the maximum possible sentence. Schmidt's sentence fell well below "a correctly calculated Guidelines range[.]" So we presume the district court's sentence is substantively reasonable. *See Faulkner*, 626 F.3d at 274 (explaining that "we disfavor challenges by a defendant that his sentence is too long despite a downward variance").

The court also did not select a sentence arbitrarily. The relevant statutory and guidelines authority directed the court's decision. The court reviewed and gave the parties the chance to object to the presentence report. It heard witness testimony from the victims and from the FBI investigator. It considered Schmidt's attorney's arguments for a shorter sentence. The district court also considered each § 3553(a) factor and stated during sentencing whether each factor weighed in favor of or against a longer sentence. And the district court did not give an "unreasonable amount of weight" to any one factor. *Tristan-Madrigal*, 601 F.3d at 633.

So Schmidt's substantive-unreasonableness argument "boils down to either (1) a contention that the sentencing judge should have weighed the circumstances differently, or (2) a mere allegation that the sentence is greater than necessary."[9] *United States v. Houston*, 529 F.3d

---

[9] Schmidt's most salient argument is that the district court "cited only one case in support of its reasoning" and that case's defendant had some criminal history not involving sexual abuse. (Appellant's Br. at 14.) But Schmidt ignores that, although the district court cited only one case by name, it explained that it reviewed "*several* other cases of production" to make its sentencing decision. (R. 63, Tr. Sent. Vol. 2, PageID 442–43 (emphasis added) (explaining that the court examined a "number of different cases over the years in this district" to make its decision).)

No. 19-5454, *United States v. Schmidt*

743, 756 (6th Cir. 2008). But those arguments "are beyond the scope of proper appellate review for substantive unreasonableness." *Id.*

We acknowledge that Schmidt must now serve a long prison sentence—30 years. But Congress and the Sentencing Commission decided to impose significant penalties for child pornography offenses. Schmidt may question those policy judgments. He may not, however, succeed on this substantive-unreasonableness challenge.

**B.**

Schmidt concedes that this court has previously considered and rejected his second argument. *See, e.g.*, *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012). But he raises them to "preserve these arguments for review by a higher tribunal[.]" (Appellant's Br. at 22 (quoting *United States v. Little*, 571 F. App'x 437, 438 (6th Cir. 2014)).) We cannot reverse the decision of another one of this court's panels. So we find that his second argument fails.

**III.**

We cannot find the district court's sentence substantively unreasonable. So we AFFIRM Schmidt's sentence.